O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

# CIVIL MINUTES - GENERAL

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING Defendant's Motion to Enforce Settlement

Pending before the Court is Defendants' Motion to Enforce Settlement. The Court heard oral argument on the matter on December 19, 2011. After considering the moving and opposing papers and the arguments made at the hearing, the Court GRANTS Defendants' motion.

I.  Background

This matter concerns the judicial enforcement of a settlement agreement. On January 26, 2011, Plaintiff Michael Drescher ("Plaintiff") filed a first amended complaint against Defendants Baby It's You LLC ("BIY LLC"), Floyd Mutrux, Northern Lights Inc., Jonathan Sanger, and Joncar Productions Inc. (collectively, "Defendants") asserting various claims arising out of an investment deal gone awry. *See* Dkt. #57. As discussed in more detail in the Court's January 7, 2011 Order granting Defendants' motion to dismiss portions of Plaintiff's original complaint, the Parties' history dates back to 2007 when Plaintiff first invested $200,000 in a musical production then-titled "The Shirelles," and now known as "Baby It's You" ("BIY"). Defendant Mutrux allegedly diverted the money for personal expenses, prompting Plaintiff to request an accounting, which was met with hostility. *See Opp.* 3:10-16.

Subsequent to this initial investment, Mutrux, who also owns Defendant Northern Lights, Inc., formed Defendant BIY LLC and transferred to it his rights in "The Shirelles/Baby It's You" (collectively, the "Mutrux Parties" or the "Mutrux Defendants"). In addition to BIY, Mutrux created and holds interests in other theatrical projects comprising his "American Pop

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

Anthology," including "Million Dollar Quartet ("MDQ"), "Heartbreak Hotel," "When the Fat Man Sang," "Boy From New York City," and "Lonesome Town" (collectively, "the Plays"). *See Mot.* 2:5-11. To date, two of the Plays - BIY and MDQ - have been commercially produced and performed on Broadway and elsewhere. *Id.*

At some point in 2008, Defendant Jonathan Sanger ("Sanger"), through his company, Joncar Productions, Inc. ("Joncar"), began conducting the business of BIY LLC, and, with the promise of new management and organized bookkeeping practices, Defendants Mutrux and Sanger approached Plaintiff in December 2008 and encouraged him to invest additional funds in the projects. *See id.* ¶ 20. On December 31, 2008, without a written contract in place, Plaintiff wired $600,000 to an account of BIY LLC in order to "book" his investment in 2008 for tax purposes. *Opp.* 3:17-4:8. Although Defendants allegedly represented that Plaintiff would receive his contract shortly, Plaintiff did not receive the contract until late March, and, when it arrived, it apparently did not contain crucial clauses upon which Plaintiff had insisted. *Opp.* 4:15-19. This prompted Plaintiff to make a second request for an accounting, which was again met with hostility. *Opp.* 4:24-5:10. Defendant Sanger responded by indicating the Defendants were no longer interested in going forward with the contract and would not be adding Plaintiff to the list of investors. *Id.* However, the Defendants did not return the $600,000, prompting the Plaintiff to file the present lawsuit on March 8, 2010. *See* Dkt. #1(March 8, 2010).

After over a year and a half of litigation, on October 20, 2011, Magistrate Judge Paul L. Abrams conducted a Court-ordered settlement conference. *See* Dkt. #98. The parties reached a settlement and announced their intention to place the material terms on the record. *See Opp.* 2:19-26. The relevant portions of the ensuing colloquy are as follows:[1]

| | |
|---|---|
| Judge: | ... I understand the parties have reached an agreement to settle this matter. Counsel, is that right? Mr. Mirell you're at the podium, so ... |
| Mirell: | {Counsel for Defendants} Yeah, so let me attempt to identify what the terms of the settlement are. |

---

[1] The following is taken from a transcription of the audio transcript completed and submitted by the Defendants. *See* Mirell Decl. ¶ 4, Ex. B. Plaintiff does not dispute its accuracy.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

# CIVIL MINUTES - GENERAL

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

Judge: Okay. I want all counsel and the parties to listen very carefully because you're all going to have to chime in when Mr. Mirell is done.

Mirell: First, [we've] reached a settlement by which no money will change hands immediately.... There will then be a 50%/50% split of back-end proceeds from six plays, two of which have already been performed, four of which are yet to be performed and that - those proceeds will be net of any royalty payment to which Floyd Mutrux or any of his entities might be entitled for any services as writer, director, conceiver, producer or any other form of royalty. So all of those royalties are netted out of the proceeds to which [Plaintiff] ultimately will be entitled. The maximum amount to which he will be entitled is $800,000, which represents the sum of his two investments in this project.... And Mr. Drescher will look exclusively to those proceeds as I've identified them for the source of repayment. There will be no personal liability on the part of Mr. Mutrux other than to ensure that those proceeds are paid. There will be an agreement to - that Mr. Dresher will be entitled to, in addition, receive a [1% of] 100% interest in all those six shows, paid exclusively out of Mr. Mutrux's interest in those six shows. So, by way of example, if...hypothetically [Mutrux] owns a 50% interest in a particular show or a particular aspect of a show - then Mr. Drescher would receive a 2% interest in Mr. Mutrux's interest in that show, thus making the equivalent of a 1% interest in the show as a whole....The other monetary component that we agreed to is that [Plaintiff] will be entitled to a 2% of 100% interest (defined in the same way) with respect to one of the four shows in development - namely, not [MDQ] or [BIY]. [Plaintiff] will be given a time to be agreed upon within which to decide which of the four shows he wishes to invest in and when he does make that election...he will then be entitled to receive an executive producer credit with respect to that one show. We have also agreed that the pending action in this court will be dismissed with prejudice with respect to all parties other than Mr. Mutrux (who remains obligated to ensure the performance of the payment of proceeds from these shows). [A prior agreement] will be nullified and voided, and when we document this agreement finally in a formal settlement agreement, we will agree upon a confidentiality provision

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

                    as well as a mutual non-disparagement provision. I believe those are all of the terms.

Judge:     Mr. Zalon.

Zalon:     {Counsel for Plaintiff} Uh, just a couple of additions, Your Honor. We had discussed a representation that there is no present judgments against Mr. Mutrux and no known obligations - present or contemplated - that would interfere with any of the payments made under this agreement and we would also request that within a certain period of time, as quickly as possible, that Mr. Mutrux's current interest in each of these shows be identified in order to prevent essentially a dilution of the 50/50 payback - or payout.

                    ....

Mirell:     ...As I understand the last part of Mr. Zalon's comment is that we will identify to them the current percentage interest that you [Mr. Mutrux] hold in each of these properties.

Mutrux:     No, what he said was, as quickly as possible.

Zalon:     Yes. And that will be non-diluted.

Mutrux:     But I won't know that until I know who is my partner in the show - I won't know that until I know who's financing the show...

Mutrux:     It doesn't affect your percentage

[indecipherable speaking among parties]

Plaintiff:     No, but it could - it could affect a 50/50 payout - if you don't - it reduces your pool.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

| | | |
|---|---|---|
| Zalon: | It's going to. It's going to reduce his pool. Because he's not going to have 100%. |
| Plaintiff: | Of course. |
| Zalon: | He's not going to have 100%. |
| Plaintiff: | But if you decide to sell off your interest in - in - in MDQ at a discount, you know... |
| Zalon: | No, no, MDQ is going to be non-dilutable as will Baby It's You because your interest is already set. Yes? |
| Mutrux: | Yes. |
| Zalon: | Yeah, I think that's okay. |

[Indecipherable discussion]

| | |
|---|---|
| Judge: | Alright, Mr. Zalon, with the additions that you made on the record are there any additional conditions you think should be placed on the record at this time? |

[Parties reiterate that payments to Plaintiff will be net of royalties and other payments due to the writer, director, producer, and conceiver.]

| | |
|---|---|
| Judge: | Mr. Zalon. Anything further you think should be put on the record? |
| Zalon: | No, Your Honor. |
| Judge: | Does this accurately describe the essential terms? |
| Zalon: | Yes. |
| Judge: | Mr. Mirell - anything else you think should be placed on the record? |

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

| | |
|---|---|
| Mirell: | Uh, I don't believe so.  I think we will probably take the first crack at preparing a form of settlement agreement. |
| Judge: | I'll get to that in a second.  Mr. Ginsburg, anything else? |
| Ginsburg: | Nothing, Your Honor... |

.... 

| | |
|---|---|
| Judge: | Okay, let me ask each of the parties then if you - let me - let me start with you, [Plaintiff].  Do you understand the terms of the agreement that we placed on the record? |
| Plaintiff: | Yes. |
| Judge: | And do you - do you agree with those terms? |
| Plaintiff: | Yes. |

[Mr. Mutrux and Mr. Sanger also indicate individually and on behalf of their entities, BIY LLC, Northern Lights, and Joncar that they understand the terms that have been placed on the record and agree to settle based on those terms.]

| | |
|---|---|
| Judge: | Alright.  So, Mr. Mirell is going to have to take the first crack at writing this up... |

[The Parties set a deadline by which to file the settlement papers with the Court.]

| | |
|---|---|
| Zalon: | The only thing we wish to add, You Honor, is, in order to assure the integrity of the settlement, that Mr. Mutrux will make representations as to his interests in each of these shows. |
| Judge: | On the record right now? Or - or... |
| Mirell: | As part of the settlement documentation. |

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

    Ginsburg:    I thought that was said.

    Judge:    I thought it was too. So, okay. Alright, anything further?

    ....

    Clerk:    Court is adjourned.

*See* Mirell Decl., Ex. B.

    That same day, the magistrate issued a minute order confirming that all "material terms of [the] settlement [were] placed on the record." *See* Dkt. #98 (Oct. 20, 2011). Defendants subsequently prepared a Settlement Agreement and Mutual General Release purporting to memorialize the terms of the settlement as set forth on the record. *See* Mirell Decl., Ex. C. The Agreement was sent to Plaintiff, who refused to sign it. *Opp.* 2:12-23.

    Although Plaintiff initially objected to the Settlement Agreement on the basis that Defendant Mutrux had misrepresented his actual interest in MDQ during the negotiations leading up to settlement, the Parties are now in agreement that the size of Defendant Mutrux's current percentage interest in MDQ, or in any of the other Plays, was not a material condition to the settlement's enforceability. *Id.*; *Opp.* 2:16-23 ("We submit that the agreement described on the record before Judge Abrams was wholly induced by a misrepresentation by Mr. Mutrux [regarding his current equity interest in MDQ,] [h]owever, as that representation was not made a part of the settlement record, we do not claim that as a basis for [Plaintiff's] refusal to sign the draft settlement agreement."). The Parties also agree that the Settlement Agreement accurately reflects the recoupment, or "Temporary Sharing Percentage" provision, which entitles Plaintiff to recover his $800,000 investment only from the Mutrux Parties' back-end proceeds from all of the Plays, according to the agreed-upon 50%/50% sharing percentage. *Opp.* 5:15-26; Mirell Decl., Ex. C., ¶ 3 ("Temporary Sharing Percentage").

    Plaintiff now refuses to sign the Settlement Agreement only on the grounds that the "One Percent Sharing Percentage" and "Additional Sharing Percentage" described therein were intended to run concurrently with and in addition to the Plaintiff's recoupment of his $800,000 investment under the "Temporary Sharing Percentage," instead of only upon its full satisfaction,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

and because the draft Agreement allegedly misstates or inadequately represents the Mutrux Parties' actual equity interest in the Plays.

Defendants contend that the language in the draft Settlement Agreement is accurate in that Plaintiff is not entitled to receive the One Percent Sharing Percentage or the Additional Sharing Percentage interests until after his $800,000 investment is recouped, if ever. *Mot.* 3:7-20; Mirell Decl., Ex. C. ¶¶ 4, 5 ("One Percent Sharing Percentage. Upon expiration of the Temporary Sharing Percentage, [Plaintiff] shall thereafter receive a non-dilutable one percent (1%) of one hundred percent (100%) interest in all Proceeds from the Plays..."). Defendants also dispute that they were obligated to describe the extent to which the Mutrux Defendants' interests in the Plays might increase over time in identifying their "current interest" in the Plays, and, of course, argue that the representations stated in the Agreement are accurate in all respects.

II.     Legal Standard

It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. *See MetroNet Services Corp. v. U.S. West Commc'ns*, 329 F.3d 986, 1013-14 (9th Cir. 2003) (certiorari granted and judgment vacated on other grounds by *Qwest Corp. v. MetroNet Services Corp.*, 540 U.S. 1147 (2004)). However, "[l]ike many rules of thumb, this well-settled practice has its limits." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). "[T]he district court may enforce only *complete* settlement agreements." *Callie v. Near*, 829 F.2d 888, 889 (9th Cir. 1987) (emphasis in original). Accordingly, the Ninth Circuit has found that where "material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties much be allowed an evidentiary hearing." *Id.* (emphasis in original). This is because summary enforcement 'is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the [settlement] contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve.'" *In re City Equities Anaheim*, 22 F.3d at 957 (quoting *Russell v. Puget Sound Tug & Barge Co.*, 737 F.2d 1510, 1511 (9th Cir. 1984)).

However, where the parties have voluntarily appeared in open court, announced that they have settled, and also placed the material terms of the settlement on the record, there is no need for an evidentiary hearing on whether an agreement existed, or what its terms are. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138-39 (9th Cir. 2002) (distinguishing *Callie*, *supra*). Rather, "the parties [have] dispelled any such questions in open court." *See id.* at 1139 (quoting

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

*Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment Corp.*, 629 F. Supp. 257, 259 (S.D.N.Y. 1986) ("...since both parties made representations to the court that a settlement had been consummated, the court is empowered summarily to require the parties to comply with their representations...."). A court may interpret the terms of the settlement memorialized on the record, along with the proposed written agreement, in order to determine whether the two are in accord. *See id.* at 1139.

The construction of a settlement agreement is governed by the local law concerning the interpretation of contracts, *see United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992), and courts construe settlement agreements in favor of enforcement, *see Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation." (citation omitted)).

III. Discussion

The Parties do not dispute that the October 20, 2011 oral settlement represents a complete, binding agreement. *See Mot.* 7:8-9:9; *Opp.* 5:11-28. Rather, Plaintiff disputes that the written iteration matches the material terms entered on the record before Magistrate Judge Abrams. *Mot.* 5:11-12:13; *Opp.* 5:11-12:13. In addition, Plaintiff requests that the Court add a provision for periodic statements and the right to examine Defendant Mutrux' records. The Court first addresses the enforceability of the oral settlement agreement, before considering whether Defendants' draft accurately and sufficiently codifies its terms.

    A.    <u>Enforcement of the October 20, 2011 Oral Settlement Agreement</u>

The Court finds that the October 20 agreement bound the parties to settlement. The Parties voluntarily appeared in open court, announced that they had reached a settlement, and placed all material terms on the record. Magistrate Judge Abrams asked both parties on several occasions whether the conditions placed on the record were commensurate with their understanding of the settlement's materials terms, and whether all material terms had been entered. Both questions were answered affirmatively by all Parties and their counsel. *See Doi*, 276 F.3d at 1134-41 (holding an oral settlement agreement entered into on the record was "the binding agreement [] made" where both parties had agreed to settle the case and place the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

material terms on the record, and had indicated that the terms so entered accurately reflected their agreement). Accordingly, and as in *Doi*, the Court finds that the oral settlement constitutes the complete, binding agreement between the parties.

For the same reasons, the Court declines Plaintiff's invitation to incorporate additional terms requiring the Defendants to provide periodic account statements and to allow the Plaintiff to inspect Defendant Mutrux's records. If Plaintiff had intended these terms to be a material part of the settlement agreement, he had ample opportunity to so state at the October 20 settlement conference. He did not do so, despite Magistrate Judge Abrams repeated inquires. Instead, he represented that a record notable for their absence nonetheless included all material terms. *See* Mirell Decl., Ex. B; Dkt. #98 (Oct. 20, 2011). Nor was Plaintiff unaware of the desirability of obtaining an accounting at the time of settlement - indeed, Plaintiff had demanded (and been refused) an accounting of Defendants' records twice prior to the initiation of this action, and Plaintiff's original complaint in fact included a claim for one, to say nothing of the fact that his entire action was premised upon the Defendants' alleged diversion of his investments for their own personal use, and on their refusal to keep or provide him with access to any accurate financial statements. *See* Dkt. #1(March 8, 2010). Plaintiff entered into an agreement that did not entitle him to an accounting with his eyes open, and he may not now incorporate that right as an additional term after the fact.

    B.    <u>Construction of the Oral Settlement Agreement</u>

Having determined a binding settlement was reached in this case, the Court next interprets that agreement and determines whether Defendants' written iteration accurately reflects its agreed-upon terms. *See Doi*, 276 F.3d at 1139.

Under California law, a contract is to be interpreted so as "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. The mutual intent of the parties is to be determined from the language of a contract, "if the language is clear and explicit, and does not involve an absurdity." *See id.* § 1638. "Parol evidence is properly admitted to construe a contract only when its language is ambiguous." *F.B.T.*, 621 F.3d at 963. A court first "provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126, 76 Cal. Rptr. 3d 585 (2008). If in light of the extrinsic evidence the language is reasonably susceptible to the interpretation

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

urged, the extrinsic evidence is then admitted to aid in interpreting the contract. *Wolf v. Sup. Ct.*, 114 Cal. App. 4th 1343, 1351, 8 Cal. Rptr. 3d 649 (2004). When there is no material conflict in the extrinsic evidence, or where no extrinsic evidence is submitted, the court interprets the contract as a matter of law. *Walt Disney*, 162 Cal. App. 4th at 1126. The court must settle the proper interpretation of a contract as a matter of law even when conflicting inferences can be drawn from undisputed extrinsic evidence, or where that extrinsic evidence renders the contract language susceptible to more than one reasonable interpretation. *Id.* However, if there is a conflict in the extrinsic evidence, then the jury must resolve the factual conflict. *See City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395, 75 Cal. Rptr. 3d 333 (2008).

With these principals in mind, the Court considers the proper construction of the settlement terms entered on the record.

### 1. The One Percent Sharing and Additional Sharing Percentages Clause

Plaintiff argues, apparently for the first time in his opposition to this motion,[2] that the One Percent Sharing and Additional Sharing Percentages (together, the "Sharing Percentages") agreed to on the record clearly provide the Plaintiff with an immediate share of profits in these amounts. By contrast, the corresponding provisions in the draft Settlement Agreement state that the Plaintiff will be entitled to receive the Sharing Percentages, *only* upon full recoupment of Plaintiff's $800,000 investment through the 50%/50% back-end Temporary Sharing Percentage. In interpreting the mutual intent of the Parties' the Court begins with an analysis of the contract language itself. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1166, 6 Cal. Rptr. 2d 554, 557 (1992).

The Court agrees that terms placed on the record by Defendant Mutrux's own attorney support Plaintiff's interpretation:

---

[2] Plaintiff confirmed at the hearing that he did not raise this objection to the draft Agreement's enforceability either in the written correspondence leading up to Defendants' motion, or during a November 30, 2011 teleconference with Magistrate Judge Abrams. Defendants' contend that in light of this dilatory conduct, Plaintiff should be deemed to have waived this objection. While the Court will not bar Plaintiff from raising this argument, as discussed below, Plaintiff's belated objection will be considered as evidence of the Parties' mutual intent at the time of settlement.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

Mr. Mirell: ...There will be an agreement to - that Mr. Dresher will be entitled to, in addition, receive a [1% of] 100% interest in all those six shows, paid exclusively out of Mr. Mutrux's interest in those six shows....The other monetary component that we agreed to is that [Plaintiff] will be entitled to a 2% of 100% interest (defined in the same way) with respect to one of the four shows in development - namely, not [MDQ] or [BIY].

The above language, which follows a description of the 50%/50% profit sharing method through which Plaintiff's $800,000 investment will be recouped, clearly grants the 1% and additional 1% interests "in addition" to the recoupment provision. There is no indication that Plaintiff's entitlement to these sharing percentages is contingent upon his having fully recovered his principal investment through his 50% stake in Mutrux's back-end participation, net of royalties. Nor is this a small difference, as the Mutrux Parties' minuscule actual back-end interest in MDQ - the most successful play to date - decreases the likelihood that Plaintiff's $800,000 principal will ever be recouped. Rather, the Parties agreed only that the Plaintiff "will be entitled to...receive a [1% of] 100% interest" and "will be entitled to" an additional 1% interest in one of the four shows. Accordingly, as Defendants' interpretation, like Plaintiff's request for an accounting discussed *supra*, would require the Court to read in a material term not agreed to by the Parties - namely, that the full recoupment of Plaintiff's $800,000 was a condition precedent to receiving the Sharing Percentages - the Court finds the contractual language unambiguously favors Plaintiff's interpretation.

Defendants, of course, disagree with this categorization, arguing that if they had intended for Plaintiff to receive the Sharing Percentages while simultaneously recouping his initial investment, they would have stipulated that the Plaintiff "will be entitled to *concurrently* receive a 1% of 100% interest in ... all six shows that we've discussed." Defendant is incorrect, for the simple reason that, as stated above, the inclusion of the word "concurrently" is not necessary to unambiguously convey the meaning urged by Plaintiff. To wit, that the agreement granted Plaintiff a 1% of 100% interest distinct from and "in addition" to the recoupment provision.

However, this is merely the first step in the Court's inquiry. "The fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms." *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39, 442 P.2d 641 (1968) (holding that "rational interpretation requires at least a preliminary consideration of all credible evidence offered to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

# CIVIL MINUTES - GENERAL

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

prove the intention of the parties"). Accordingly, the Court considers Defendants' arguments and extrinsic evidence in order to determine whether they nonetheless render the language reasonably susceptible to their interpretation. *See First Nat. Mortg. Co. v. Federal Realty Inv. Trust*, 631 F.3d 1058, 1066-67 (9th Cir. 2011).

The Court is unconvinced by the Defendant's argument that Plaintiff's proposed interpretation is incorrect because it could result in personal liability for Mr. Mutrux, which the Court agrees is not contemplated by the settlement agreement. By their own terms, both the Temporary Sharing Percentage and the Sharing Percentages provide that they are to be paid exclusively out of Mutrux's interest. Therefore, this represents the ceiling on Plaintiff's recovery under either interpretation, even if Mutrux's interest in a given show is insufficient to cover the full amount to which Plaintiff would otherwise be entitled.

The Court does find persuasive, however, Defendants' evidence regarding the Parties' course of dealing subsequent to the October 20 settlement conference. A construction given to an agreement "by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight...." *See Wells v. Wells*, 74 Cal. App. 2d 449, 458, 169 P.2d 23 (1946). Although in this case dispute followed closely on the heels of settlement, the Court nonetheless finds the rationale underlying the consideration of "course of dealing" evidence applicable here. Plaintiff received the draft Agreement on October 26, just six days after the settlement conference. *Mot.* 24-26; Mirell Decl., Ex. D. After considering the draft Agreement for over a week, Plaintiff's counsel sent a letter to Defendants objecting only to the small percentages identified as Mutrux's interest in MDQ. *See* Mirell Decl., Ex. E. Specifically, Plaintiff objected that "since [Mutrux's] interest in MDQ (sic) is so vastly different from what he represented to us when we spoke informally (at the judge's suggestion) just prior to the lunch break...unless those figures are corrected, we do not have a deal. I hope that was just a typo." *Id.*

Plaintiff raised no objection to the Settlement Agreement's characterization of the Sharing Percentages at that time, despite the clear language used in the Agreement that the Sharing Percentages would be available only "[u]pon expiration of the Temporary Sharing Percentage." *See* Mirell Decl., Ex. C, ¶¶ 4, 5. Rather, his sole objection was that "unless [the figures identifying Mutrux's interest in MDQ] are corrected, we do not have a deal." *See* Mirell Decl., Ex. E. Over a month later, the Parties held a telephonic conference call with Magistrate Judge Abrams during which they aired their disagreements regarding the draft Agreement. At

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

this time, Plaintiff still did not voice any objection to the Sharing Percentages as described therein. *See Reply* 8:20-23. Indeed, it was not until after the Defendants filed their motion to enforce settlement, which included a transcription of the settlement conference's audio transcript, and after it became apparent that his original objection regarding Mutrux's alleged misrepresentations would not hold water, *see The Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011), that Plaintiff raised this 11th-hour objection as an alternative basis for avoiding the Settlement Agreement. *Id.*

As Plaintiff does not dispute this evidence, the Court admits it and construes the settlement agreement as a matter of law. *See Walt Disney*, 162 Cal. App. 4th at 1126. Given the unambiguous language in the draft Settlement Agreement and the fact that the Plaintiff raised no objections to it for six weeks following receipt, until after he was forced to concede his original (and likely his actual) objection, the Court finds Defendants' interpretation correct in that although the Sharing Percentages were granted "in addition" to the Temporary Sharing Percentage, both Parties contemplated that they would begin accruing only after the full recoupment of Plaintiff's investment through the Temporary Sharing Percentage. Plaintiff may not capitalize on the unfortunate language entered on the record as a pretext for avoiding an agreement with which he is otherwise dissatisfied.

For the foregoing reasons, the Court finds the Sharing Percentages contained in the Settlement Agreement accurately reflect the terms entered into the record during the settlement conference.

2. <u>The Adequacy of Defendants' Representations</u>

Plaintiff raises two arguments as to why the representations contained in the draft Settlement Agreement are inadequate. First, Plaintiff contends that because the Mutrux Defendants' interest in MDQ will increase as they retire a separate obligation to another investor, the Settlement Agreement's representations (which include only the present profit participation interests) are inadequate in that they include no information regarding how the Mutrux Parties' interests will increase in the future. *See Opp.* 6:9-16. Defendants dispute that they are required to make any representation regarding the Mutrux Defendants' "future interests" in MDQ under the terms of the settlement agreement. *See Reply*, 3:12-13. Second, Plaintiff claims that a series of purportedly inconsistent statements made by the Defendants undermine

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

the reliability of the actual representations made, such that Plaintiff is entitled to discovery. The Court addresses each argument in turn.

At the October 20 settlement conference, the Parties agreed to a settlement which included the following request:

> Zalon: {Counsel for Plaintiff} Uh, just a couple of additions, Your Honor. We had discussed a representation that there is no present judgments against Mr. Mutrux and no known obligations - present or contemplated - that would interfere with any of the payments made under this agreement and we would also request that within a certain period of time, as quickly as possible, that Mr. Mutrux's current interest in each of these shows be identified in order to prevent essentially a dilution of the 50/50 payback - or payout.

*See* Mirell Decl., Ex. B.

Counsel for Defendants then sought clarification, confirming that "[a]s I understand the last part of Mr. Zalon's comment is that we will identify to them the current percentage interest that you [Mr. Mutrux] hold in each of these properties." *See id.* He then repeated for a second time that the settlement agreement "will include as a representation...the current interest that Mr. Mutrux holds in each." *See id.* Plaintiff's counsel responded, "[y]es. And that will be non-diluted." *See id.*

In an attempt to comply with the above, Defendants identified the percentage of the Proceeds the Mutrux Defendants are currently entitled to receive from each of the Plays. As noted above, Plaintiff contends this identification is deficient, as it does not indicate how the percentages will increase in the future as a separate obligation to another investor is retired, nor shed any light on the maximum percentage that Mutrux could ultimately receive. *See* Mirell Supp. Decl. ¶ 4.

Where, as here, the contract language is clear and explicit, and does not involve and absurdity, that language is to govern its interpretation. *See* Cal. Civ. Code § 1638. Nonetheless, to the extent the Parties have submitted extrinsic evidence, the Court will provisionally consider

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

such evidence in determining whether the contract is reasonably susceptible to the proffering party's interpretation. *See Walt Disney*, 162 Cal. App. 4th at 1126.

In this case, the Plaintiff made a specific and narrow request: he asked the Defendants to identify Mutrux's "current interest" in the Plays. Absent any indication to the contrary, the "words of a contract are to be understood in their ordinary and popular sense." *See* Cal. Civ. Code § 1644. The Court agrees with Defendants that this "meant that Mutrux was to identify his economic interests in the plays as those interests existed at the time of settlement." *See Reply*, 4:20-22. Given that the Plaintiff chose to specifically request Mutrux's "current" interest, there is nothing in the contract to indicate that the Parties intended this term to include "future" interests as well. Moreover, the Defendants twice confirmed their understanding that the Plaintiff sought only Mutrux's "current interest" in the Plays, and have indicated that they could not have agreed to provide the information Plaintiff now seeks without violating a confidentiality provision in the Katell settlement agreement.

Even acknowledging Plaintiff's argument that the identification was sought "in order to prevent essentially a dilution of the 50/50 payback - or payout" of Mutrux's interest in MDQ, the Court finds the instrument is not reasonably susceptible to Plaintiff's interpretation. Although Mutrux's right to an increased revenue percentage at some unspoken time and in some unspoken amount arguably presents an opportunity for dilution, a provisional consideration of Plaintiff's own extrinsic evidence demonstrates that the Plaintiff had actual knowledge of this situation prior to entering into the agreement. *See* Drescher Decl. ¶ 4. Plaintiff admits that he knew on the day of the settlement conference that Mutrux's current percentage interest had been temporarily reduced, and that this interest could increase in the future once (and if) the Katell debt was retired. *See Drescher Decl.* ¶ 4. Still, Plaintiff chose to limit his request to the identification of Mutrux's "current" interest.

Finally, the Court notes that other statements in Plaintiff's declaration suggest that the Plaintiff was wholly unconcerned with Mutrux's future interests at the time of settlement, supporting the Court's interpretation that the Parties mutually intended to identify only Mutrux's "current" interest. Specifically, Plaintiff declares that "[s]ince I had - and continue to have - every expectation that MDQ will be profitable, I was satisfied that splitting *even just* [Mutrux's current percentage interest in] MDQ's profits would eventually guarantee the return of my $800,000.00." *See Drescher Decl.* ¶ 4 (emphasis added). Based on the foregoing, the Court finds that far from rendering the contractual language reasonably susceptible to Plaintiff's

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

# CIVIL MINUTES - GENERAL

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

interpretation, the extrinsic evidence suggests that Plaintiff's actual gripe is rooted in the fact that the figures identified were quantitatively different than what he was led to believe, and not in the fact that the information provided was qualitatively different from that sought.

For the foregoing reasons, the Court concludes that the settlement entered on the record neither favors nor is reasonably susceptible to Plaintiff's interpretation, and therefore finds the disclosures under ¶¶ 2(b)-(d) of the draft Settlement Agreement adequate.

Next, Plaintiff argues that the profit participation percentages actually identified in the Settlement Agreement "may be inaccurate" and seeks discovery regarding the true amount of the Mutrux Defendants' equity percentages in the various shows. In support of this argument, Plaintiff casts various aspersions regarding conduct he finds suspicious or inconsistent. First, Plaintiff argues that while he made clear at the October 20 settlement conference that he wanted Mutrux to identify his current interests as of that date, the draft Settlement Agreement identified Mutrux's interests only "[a]s of the date of this Settlement Agreement." Second, Plaintiff claims that given Mutrux's admission on November 17 that he still had not signed a settlement agreement in the Katell arbitration, defense counsel's representation that the meager percentages identified in the draft Settlement Agreement were low because they had already been reduced by Katell's entitlement cannot be believed.

Plaintiff is wrong on both points. First, Plaintiff did not specifically request the identification of the Mutrux Defendants' interests as of October 20, 2011, rather, he requested that Mutrux's current interest be identified as quickly as possible in the settlement documents. In any event, Defendants have submitted to this Court, under penalty of perjury, that Mutrux's interests have not changed since the October 20 settlement conference, or, indeed, for several months prior to that. *See* Mirell Supp. Decl. ¶¶ 5, 6.

Second, as evidenced by the binding settlement agreement read into the record in this case, Mutrux's statement that he had not *signed* a written settlement agreement with Katell is not inconsistent with his counsel's representation that they nonetheless had reached a settlement in that case on August 29, 2011. *See id.* Indeed, Defendants submit evidence that the Katell arbitration was settled on August 29, 2011, with the material terms then placed on the record before the Arbitrator. *See id.* ¶ 4. Accordingly, by the time of the October 20 settlement conference, both statements were true and were not inconsistent; Mutrux's participation had been reduced by the amount he owed Katell, and they had not yet signed a written agreement.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#5
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-6854 PSG (PLAx) | Date | December 21, 2011 |
|---|---|---|---|
| Title | Michael Drescher v. Baby It's You LLC, *et al.* | | |

*See id.* Because the Court sees nothing inconsistent in the Defendants' factual positions, the Court will not read in a right to discovery not bargained for by the Parties, and Plaintiff may not avoid the Settlement Agreement on this basis.

    C.    Summary

For the aforementioned reasons, the Court finds that the draft Settlement Agreement accurately reflects the material terms of the Parties's agreement as set forth on the record during the settlement conference, and compels its enforcement.

IV.    Conclusion

Defendant's motion to enforce settlement is GRANTED. Plaintiff is directed to sign the draft Settlement Agreement. The action is hereby dismissed, with the Court retaining jurisdiction to enforce the settlement.

    **IT IS SO ORDERED.**